IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSE MANUEL VARGAS,<br>　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | EP-23-CV-410-DB |
| UNITED STATES BORDER<br>PATROL-CUSTOMS AND BORDER<br>PROTECTION, *et al.*,<br>　　Defendants. | §<br>§<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Jose Manuel Vargas, proceeding *pro se* and *in forma pauperis*, seeks compensatory and punitive damages from unnamed federal officers in their individual capacities through a civil rights complaint brought pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Pl.'s Compl., ECF No. 10 at 6; Pl.'s Amendment, ECF No. 2. His complaint—which seeks redress from government officials—is subject to screening under 28 U.S.C. § 1915A(a). *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). After completing the screening, the Court finds that it should **DISMISS** Vargas' complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim on which relief may be granted.

### BACKGROUND AND PROCEDURAL HISTORY

According to Vargas, he was driving his personal vehicle on Interstate 10 (I-10) on April 27, 2023. Pl.' Aff., ECF No. 1-2, p. 1. Approximately eight miles east of Ft. Hancock, Texas, he observed a dark, late model sedan following "extremely and dangerously close" to him. *Id.* He

---

[1] *See* Order Granting Defendant United States Customs and Border Protection's Motion to Dismiss, ECF No. 41.

conceded "any person" would believe that "the vehicle was an official law enforcement vehicle." *Id.* Nonetheless, he became apprehensive because he believed the area was "plagued ... with murders, kidnappers and miscreants operating on behalf and for the various drug and crime cartels that operate in the region." *Id.* So, Vargas exited I-10 and was immediately blocked by a locked gate. *Id.* at 2. He turned onto an unpaved road which ran parallel with I-10 and entered a narrow trail to regain access to I-10 before his vehicle became stuck in a sand dune. *Id.* Vargas attempted to flee his vehicle on foot but was only able to get "about 30 feet" away before he stopped. *Id.* Vargas was approached and apprehended by a Border Patrol officer who followed him into the brush on foot. *Id.* He was searched and his wallet containing $480 was taken. *Id.* at 3. Vargas claimed the officer then "shoved" him through mesquite bushes to get him back to the officer's vehicle:

> He proceeded to verbally threat[en] me that he was going to shove me into a mesquite bush .... He then—shielding his own person with my body—shoved me forward through a section of the mesquite, causing me to sustain injury to my left arm, shoulder and knee. I was subjected to needle-sharp thorns born of the mesquite that resulted in multiple puncture wounds ...

*Id.* Vargas was placed in the back seat of the Border Patrol vehicle and immediately sensed "a foul odor." *Id.* at 4. He was detained at the Fort Hancock Border Patrol Station until his transfer to the El Paso County Detention Center (EPCDC). During Vargas' first week of confinement at the EPCDC, he received medical care to remove sharp thorns from his left arm, knee, and shoulder; treat his acute headaches; and address his sinus congestion. *Id.* at 5–6.

According to Customs and Border Protection (CBP) records, a Field Intelligence Agent (FIA) with the Fort Hancock Border Patrol Station was conducting surveillance for undocumented aliens on April 27, 2023, at the 86.5-mile marker on I-10 in Hudspeth County, Texas. Def.'s Report, Ex.1, Attach. C, Report of Investigation, ECF No. 29-5 at 3. The FIA observed a vehicle pull over

on to the shoulder of I-10 directly south of his location. *Id.* The FIA noted the vehicle matched the description of a vehicle owned by Vargas, who was "currently on federal probation for alien smuggling."[2] *Id.* 4. The FIA observed seven individuals emerge from a bush and get into Vargas' vehicle before he drove off heading east on I-10. *Id.* at 4. He reported Vargas' vehicle crossed over the median and began driving west on I-10. *Id.* He saw Vargas' vehicle pass him headed westbound and suddenly exit I-10 and travel north before turning east onto a desert road not usually traveled by the public. *Id.* The FIA watched as multiple individuals jumped from Vargas' vehicle while the vehicle was still moving. *Id.* The FIA reported another Border Patrol officer detained Vargas after his vehicle became stuck in the sand. *Id.* The FIA observed other officers as they apprehended the seven individuals who had boarded and then jumped from Vargas' vehicle. *Id.* The officers reported the seven individuals Vargas had picked-up did not have documents allowing them to legally enter or remain in the United States. *Id.*

Vargas underwent an initial medical intake examination upon his arrival at the EPCDF on April 28, 2023. Def.'s Report, Ex. 2, EPCDF Correctional Health Clinic Records, ECF No. 29-2 at 30–34, 45. Vargas' assessment disclosed that he had "THORNS/ SCRATCHES TO BILATERAL HANDS/ARMS FROM FALL IN BUSHS [sic]." *Id.* at 33, 45. But he did not complain about any loss of his olfactory senses. *See id.* at 30–34. Indeed, his medical records from his detention at the EPCDF between April 28, 2023, and June 8, 2023, did not show that he complained of any loss of his olfactory senses. *See* Ex. 2, generally. And he did not exhibit a persistent cough, difficulty breathing, or the need for further evaluation at a hospital. *Id.* at 31–32. Importantly, Vargas was reexamined by the EPCDF medical staff on May 1, 2023, and his wounds from the mesquite bushes were assessed as "healed." *Id.* at 25-26. Additionally, Vargas was

---

[2] *See United States v. Vargas*, EP-19-CR-2777-DCG-1 (W.D. Tex.).

diagnosed with COVID-19 while in the custody of the Bureau of Prisons. Def.'s Report, Ex. 3, ECF No. 28-3 at 7.

Vargas pleaded guilty, pursuant to a plea agreement, to conspiracy to transport aliens. *United States v. Vargas*, 3:23-CR-00993 (W.D Tex.), R. & R., ECF No. 34, p. 1; Order Accepting Guilty Plea, ECF No. 36. He was sentenced to thirty-seven months' confinement. *Id.*, J. in a Crim. Case, ECF No. 41.

Vargas is currently a prisoner at the Federal Correctional Institution in Phoenix, Arizona. *See* Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 37911-480, last visited June 21, 2024). His anticipated release date is June 30, 2026. *Id.*

In his civil rights complaint, Vargas alleges that during his arrest for alien smuggling near Fort Hancock, Texas, unnamed federal Border Patrol officers (1) caused injuries to his arm, knee, and shoulder which required medical treatment; (2) exposed him to a chemical agent in their vehicle which caused permanent injuries to his olfactory senses; and (3) stripped him of his wallet which contained over $480.00. Pl.'s Compl., ECF No. 1-1 at 6. Vargas also alleges he was slandered, defamed, charged with a federal criminal offense, and incarcerated. *Id.*

## STANDARD OF REVIEW

A prisoner's *pro se* complaint for an alleged civil rights violation must be screened by a court as soon as practicable after docketing, regardless whether it has been filed *in forma pauperis*. 28 U.S.C. § 1915A(a); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998). A complaint must be dismissed if the court is satisfied that the action or claim is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To determine whether a complaint fails to state a claim under § 1915A, a court will apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## ANALYSIS

Vargas brings a civil rights complaint against several unnamed federal officers pursuant to *Bivens*. Pl.'s Compl., ECF No. 10. He alleges that during his arrest, the officers (1) caused injuries to his arm, knee, and shoulder which required medical treatment; (2) exposed him to a chemical agent while in a government vehicle which caused permanent injuries to his olfactory senses; and (3) stripped him of his wallet which contained over $480.00. *Id*. at 6. He also claims that they slandered, defamed, charged with a federal criminal offense, and incarcerated him. *Id*.

In *Bivens*, the Supreme Court created an implied right of action for damages against federal officers in limited circumstances. *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (citing *Bivens*, 403 U.S. at 397). *Bivens* concerned a Fourth Amendment claim which arose (1) at the plaintiff's house (2) when Federal Bureau of Narcotics agents (3) searched the plaintiff's home without a

warrant and manacled the plaintiff in front of his family. *Bivens*, 403 U.S. at 389. But a *Bivens* right of action is not available for all constitutional violations. In fact, expanding the implied right of action under *Bivens* is 'a 'disfavored' judicial activity.'" *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 147 (2017)). Indeed, the Supreme Court has extended *Bivens* only twice. Once when a congressional staff member alleged gender-based discrimination in violation of the Fifth Amendment's due-process clause. *Davis v. Passman*, 442 U.S. 228, 248–49 (1979). Then, when a federal prisoner's estate alleged defendants failed to provide medical treatment for a decedent's asthma in violation of the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14, 19 (1980).

In considering whether a *Bivens* claim is proper, a court follows a two-step analysis. First, it determines whether the claims present a new context from *Bivens*, *Davis*, and *Carlson*. *Ziglar*, 582 U.S. at 147. Then—if the claim presents a new context—the Court must consider whether special factors counsel hesitation from recognizing an implied right of action over the new context. *Id.* at 136, 149.

Vargas' case differs from *Bivens*, *Davis*, and *Carlson* in several meaningful ways. First, Vargas' claim arose in the remote West Texas desert near I-10 when he was attempting to flee from federal officers—not at his house. Second, his claim involved Border Patrol officers interdicting aliens who had entered the United States illegally—not Federal Bureau of Narcotics agents searching for drugs. Third, Vargas was detained and confined in a government vehicle after he was observed transporting aliens by federal officers—not manacled in front of his family members. Fourth, Vargas was not a congressional staff member who alleged gender-based discrimination. Finally, Vargas did not claim federal defendants failed to provide him with medical treatment—he reported he received medical care. As a result, Vargas' claims present a new context from *Bivens*,

*Davis*, and *Carlson*. *See, e.g., Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (finding the claim differed meaningfully from *Bivens* because (1) the incident took place in a parking lot rather than the plaintiff's home, (2) the Department of Homeland Security (DHS) agent prevented plaintiff from leaving a parking lot rather than conducting a warrantless search for narcotics, and (3) the DHS agent threatened the plaintiff rather than manacle him in front of his family); *Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020) (finding the claim presented a new *Bivens* context because it "involve[d] different conduct by different officers from a different agency.").

Special factors counselling hesitation are present here.

First, "[w]hen a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis." *Ziglar*, 582 U.S. at 135. Hence, "[t]he question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Egbert v. Boule*, 596 U.S. 482, 492 (2022), citing *Ziglar*, 582 U.S. at 135.

Second, Vargas has an "alternative remedial structure" available because Congress already permits tort claims against federal officers. Specifically, the Federal Tort Claims Act (FTCA) authorizes suits against the United States for damages arising from the acts or omissions of federal employees:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

7

28 U.S.C. § 1346(b)(1); *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009) ("[T]he FTCA waives sovereign immunity and permits suits against the United States sounding in state tort for money damages."). Furthermore, Vargas "cannot negate this special factor by arguing that the FTCA doesn't cover excessive-force claims." *Oliva*, 973 F.3d at 444. "[T]he alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would. *Id.*, citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) ("State-law [tort] remedies and a potential *Bivens* remedy need not be perfectly congruent."). The fact that the FTCA might not give Vargas everything he seeks is not a reason to extend *Bivens*.

Finally, "Congress did not make individual officers statutorily liable for excessive-force or unlawful-detention claims, and the 'silence of Congress is relevant.'" *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021), quoting *Ziglar*, 582 U.S. at 143. Congress is better suited to provide a damages remedy than this Court is by extending *Bivens*.

## CONCLUSIONS AND ORDERS

Because Vegas' constitutional claims present a new context from *Bivens*—and because the Court hesitates to extend *Bivens* to Vegas' claims for the reasons discussed above—the Court concludes that no implied right of action exists for Vegas' claims. Therefore, the Court further concludes that Vegas does not state a claim to relief which is plausible on its face, and the Court should dismiss his complaint with prejudice for failure to state claims on which relief may be granted. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Jose Manuel Vargas' "Complaint for Violation of Civil Rights" (ECF No. 10) is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim on which relief may be granted.

**IT IS FURTHER ORDERED** that the dismissal of Jose Manuel Vargas' complaint will

count as a "**STRIKE**" pursuant to 28 U.S.C. § 1915(g).[3] The Clerk will therefore provide a copy of this order to the Operations Department for the Western District of Texas. The Court **ADVISES** Jose Manuel Vargas that should he accumulate three strikes, he may be required to pay the full filing fee when filing additional civil actions or appeals, unless he demonstrates that he is in imminent danger of serious physical injury.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED the 24th day of June 2024.

_____
DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").